UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                       :

KISHORE NATH, Individually and On       :
Behalf of All Others Similarly Situated,     :
                                       :

                Plaintiff         :

                   v.              :
                                         :

LIGHTSPEED COMMERCE INC.,      :
DAX DASILVA, and BRANDON BLAIR   :
NUSSEY,                           :
                                         :

               Defendants.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 1:21-cv-06365-BMC

ECF Case
Electronically Filed

Oral Argument Requested

# DEFENDANTS' REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF THEIR MOTION
# <u>TO DISMISS THE AMENDED CLASS ACTION COMPLAINT</u>

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Alexander C. Drylewski
William J. O'Brien
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000
Fax: (212) 735-2000
alexander.drylewski@skadden.com
william.obrien@skadden.com

*Counsel for Defendants*

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ................................................................................................................................3

I.    PLAINTIFFS FAIL TO PLEAD A MISSTATEMENT OR OMISSION ..........................3

      A.    Plaintiffs Have Abandoned Their Claims Regarding GTV, ARPU, and
           TAM, as well as Customer Count ..............................................................................3

      B.    Plaintiffs' "Organic Customer Location" Theory Should be Rejected ....................4

      C.    Plaintiffs' "Organic Revenue Growth" Theory Fails ...............................................7

           1.    Allegations Concerning Third Quarter FY 2021 Are Flawed ......................7

           2.    Allegations Concerning First Quarter FY 2022 Are Flawed .......................9

      D.    Plaintiffs' Acquisition-Related Claims Fail ..............................................................9

      E.    Plaintiffs Cannot Evade *Omnicare* .......................................................................11

      F.    Plaintiffs Cannot Avoid the Safe Harbor or Bespeaks Caution Doctrine ..............11

II.   PLAINTIFFS FAIL TO PLEAD SCIENTER ..................................................................12

      A.    Plaintiffs Fail to Plead Motive or Opportunity ......................................................12

      B.    Plaintiffs Fail to Plead Conscious Misbehavior or Recklessness ..........................13

CONCLUSION ...........................................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Abramson v. NewLink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020)..................................................................................................11

*In re Adient plc Securities Litigation*,
2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020).........................................................................12

*Allen v. N.Y.C. Housing Authority*,
2012 WL 4794590 (S.D.N.Y. Sept. 11, 2012).......................................................................4

*Arkansas Public Employees Retirement System v. Bristol-Myers Squibb Co.*,
28 F.4th 343 (2d Cir. 2022) .................................................................................................13

*In re Australia & New Zealand Banking Group Ltd. Securities Litigation*,
712 F. Supp. 2d 255 (S.D.N.Y. 2010)................................................................................1, 3

*In re Avon Products, Inc. Securities Litigation*,
2009 WL 848017 (S.D.N.Y. Feb. 23, 2009).........................................................................13

*Budhani v. Monster Energy Co.*,
2021 WL 5761902 (S.D.N.Y. Dec. 3, 2021) .....................................................................1, 4

*Canez v. Intelligent Systems Corp.*,
2021 WL 3667012 (E.D.N.Y. Aug. 18, 2021)......................................................................13

*Chapman v. Mueller Water Products, Inc.*,
466 F. Supp. 3d 382 (S.D.N.Y. 2020)..................................................................................15

*City of Brockton Retirement System v. Shaw Group, Inc.*,
540 F. Supp. 2d 464 (S.D.N.Y. 2008)............................................................................13, 15

*City of Omaha Police & Fire Retirement Systems v.*
*Evoqua Water Technologies Corp.*,
450 F. Supp. 3d 379 (S.D.N.Y. 2020)..................................................................................11

*Cornwell v. Credit Suisse Group*,
689 F. Supp. 2d 629 (S.D.N.Y. 2010)..................................................................................14

*In re Curaleaf Holdings, Inc. Securities Litigation*,
519 F. Supp. 3d 99 (E.D.N.Y. 2021) .....................................................................................6

*In re Diebold Nixdorf, Inc. Securities Litigation*,
2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) .......................................................................6

*Employees Retirement System of Government of Virgin Islands*
    *v. Morgan Stanley & Co. Inc.*,
    814 F. Supp. 2d 344 (S.D.N.Y. 2011)...................................................................................9

*Ford v. Voxx International Corp.*,
    2016 WL 3982466 (E.D.N.Y. July 22, 2016)......................................................................10

*Frankfurt-Trust Investment Luxemburg AG v. United Technologies Corp.*,
    336 F. Supp. 3d 196 (S.D.N.Y. 2018),
    *aff'd sub nom. Kapitalforeningen Lægernes Invest v. United Technologies*
    *Corp.*, 779 F. App'x 69 (2d Cir. 2019) .............................................................................14

*In re GeoPharma, Inc. Securities Litigation*,
    411 F. Supp. 2d 434 (S.D.N.Y. 2006)...............................................................................14

*In re Gildan Activewear, Inc. Securities Litigation*,
    636 F. Supp. 2d 261 (S.D.N.Y. 2009)...............................................................................12

*Glaser v. The9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011)...............................................................................12

*Institutional Investors Group v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009)...............................................................................................14

*Lewis v. M&T Bank*,
    2022 WL 775758 (2d Cir. Mar. 15, 2022)...........................................................................5

*In re MBIA, Inc., Securities Litigation*,
    700 F. Supp. 2d 566 (S.D.N.Y. 2010)...............................................................................15

*In re Nokia Oyj (Nokia Corp.) Securities Litigation*,
    423 F. Supp. 2d 364 (S.D.N.Y. 2006).................................................................................6

*In re UBS AG Securities Litigation*,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)*, aff'd sub nom.*
    *City of Pontiac Policemen's & Firemen's Retirement System v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014)................................................................................................4

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)................................................................................................8

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 175 (2015)........................................................................................................2, 11

*Retirement Board of Policemen's Annuity & Benefit Fund of Chicago ex rel.*
    *Policemen's Annuity & Benefit Fund of Chicago v. FXCM Inc.*,
    767 F. App'x 139 (2d Cir. 2019) .........................................................................................2

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)...................................................................................................5

*In re Salix Pharmaceuticals, Ltd.*,
    2016 U.S. Dist. LEXIS 54202 (S.D.N.Y. Apr. 22, 2016)....................................................14

*In re Sanofi Securities Litigation*,
    155 F. Supp. 3d 386 (S.D.N.Y. 2016)....................................................................................5

*Speakes v. Taro Pharmaceutical Industries, Ltd.*,
    2018 WL 4572987 (S.D.N.Y. Sept. 24, 2018)....................................................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).................................................................................................................3

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)..................................................................................................11

*Venkataraman v. Kandi Technologies Group, Inc.*,
    2021 WL 4952260 (S.D.N.Y. Oct. 25, 2021)......................................................................15

*Woolgar v. Kingstone Cos., Inc.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020)..................................................................................14

*In re XP Inc. Securities Litigation*,
    524 F. Supp. 3d 23 (E.D.N.Y. 2021) .....................................................................................8

## STATUTES AND RULES

15 U.S.C. § 78u-4(c) ................................................................................................................1

Fed. R. Civ. P. 11(b) ................................................................................................................1

iv

## PRELIMINARY STATEMENT[1]

Plaintiffs' Opposition ("Opp.") marks a stunning retreat from their allegations in the CAC. Despite repeatedly accusing Lightspeed of fraudulently misstating its GTV, ARPU, TAM, and customer count—allegations that Defendants spent considerable time and effort refuting in their motion to dismiss—Plaintiffs have now ***expressly abandoned*** those claims "[a]fter further consideration and analysis," doing so through a single line in a footnote of their Opposition. (Opp. 5 n.8.) But Plaintiffs' "consideration and analysis" should have occurred ***before*** their decision to file the CAC adopting Spruce Point's misleading Short Report, and their 180-degree about-face in response to Defendants' motion to dismiss not only requires dismissal of these claims with prejudice, but also undermines Plaintiffs' credibility with respect to all of their allegations.[2]

Having withdrawn the bulk of their case, Plaintiffs now pivot to a new theory that was not pled in the CAC—namely, that Defendants used acquisitions to conceal Lightspeed's "paltry" "organic customer location adds." (Opp. 13, 18.) If there were any doubt that this claim is a new contrivance, it is dispelled by Plaintiffs' request for judicial notice of ***multiple new exhibits*** that were never even mentioned, let alone relied upon, in the CAC. (*See* Exs. P-D, P-F, P-H, P-J.)[3] It is well-settled that a pleading "cannot be amended by the briefs in opposition to a motion to dismiss," *Budhani v. Monster Energy Co.*, 2021 WL 5761902, at *3 (S.D.N.Y. Dec. 3, 2021), and thus Plaintiffs' new claim should be rejected out of hand. (Point I(B), *infra*.)

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in Defendants' opening memorandum of law ("MTD"). All emphasis is added unless otherwise noted.

[2] *See* 15 U.S.C. § 78u-4(c) (requiring court review as to whether sanctions should be awarded for failure to comply with Fed. R. Civ. P. 11(b)); *see also In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 266 (S.D.N.Y. 2010) (awarding PSLRA sanctions where plaintiff withdrew factual allegation in original complaint when it filed amended pleading).

[3] Plaintiffs also seek judicial notice of numerous other new exhibits. (Exs. P-B, P-G, P-I, P-L.)

Regardless, Plaintiffs' claim is inadequately pled. Lightspeed openly disclosed throughout the Class Period the role that its acquisitions had been playing, and were expected to play, in its customer location counts. (Point I(B), *infra*.) Plaintiffs now point to Lightspeed's disclosure, made more than one month *after* the Class Period, that it had experienced organic customer location growth of 2%, but the CAC nowhere alleges that this figure contradicts a single statement made during the Class Period. The Second Circuit has rejected the sort of "fraud by hindsight" theory that Plaintiffs attempt here. *Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. ex rel. Policemen's Annuity & Benefit Fund of Chi. v. FXCM Inc.*, 767 F. App'x 139, 141 (2d Cir. 2019).

Plaintiffs' claim that Defendants misled investors regarding Lightspeed's "organic revenue growth" is equally insufficient, as it relies on the Short Report's demonstrably flawed analysis and misconstrues (or ignores) Lightspeed's actual disclosures. (*See* Point I(C), *infra*.) Plaintiffs' claims regarding the Acquisition Statements fare no better, as Plaintiffs fail to plead any false or misleading statement, let alone explain how their claims survive the standards set forth in *Omnicare*, the PSLRA's safe harbor, and the bespeaks caution doctrine—each of which independently bars Plaintiffs' claims. (*See* Point I(D)-(F), *infra*.)

Finally, the Opposition cannot salvage Plaintiffs' inadequate scienter allegations, which, alone or in tandem, amount to nothing more than unsupported speculation that the Individual Defendants *must have known* their challenged statements were false due to their positions at Lightspeed. (*See* Point II, *infra*.) On the other hand, what facts are alleged in the CAC paint a cogent and compelling inference of *non*-fraud. (*See* Point II(C), *infra*.)

At its core, the CAC is merely a repackaging of the allegations in the Short Report—a biased and highly misleading opinion piece designed to negatively affect Lightspeed's stock price for Spruce Point's financial gain. (MTD 11.) This conclusion is underscored by Plaintiffs'

2

voluntary (and belated) abandonment of a significant portion of their claims—conduct which makes clear that the only "smoke and mirrors" in this case (CAC ¶¶ 5, 23, 24, 40, 85) are the allegations in the Short Report and, by extension, the CAC. The PSLRA demands more of plaintiffs in lawsuits alleging securities fraud, which "can be employed abusively to impose substantial costs on companies and individuals." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007). This is precisely the type of case the PSLRA was enacted to prevent, and accordingly, the CAC should be dismissed in its entirety with prejudice.

## ARGUMENT

### I.   PLAINTIFFS FAIL TO PLEAD A MISSTATEMENT OR OMISSION

#### A.   Plaintiffs Have Abandoned Their Claims Regarding GTV, ARPU, and TAM, as well as Customer Count

Throughout the CAC, Plaintiffs repeatedly alleged that Defendants intentionally misstated GTV, ARPU, and TAM. (*See, e.g.*, CAC ¶¶ 22-31, 33-34, 47-49.) Rather than defend these claims, Plaintiffs now state: "After further consideration and analysis, [they] will only pursue [their] claims as to misstatements regarding Lightspeed's growing customer base, organic software and payments revenue growth, and the ShopKeep, Upserve, and Vend acquisitions, as set forth in the SOF herein." (Opp. 5 n.8.) Plaintiffs' "consideration and analysis" should have occurred before filing the CAC, not after Defendants undertook the process of refuting those claims. *Austl. & N.Z. Banking Grp.*, 712 F. Supp. 2d at 266 ("Counsel may not drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation.").

The CAC further alleged that Defendants made an "egregious misstatement" by reporting over 47,000 customers, which Plaintiffs characterized as "a 74% overstatement." (CAC ¶ 30.) As Defendants explained, there was no misstatement at all—just Plaintiffs' failure to read the disclosures or perform basic math. (MTD 15-16.) Plaintiffs do not respond to these points and thus

abandon this claim as well. *See In re UBS AG Sec. Litig.*, 2012 WL 4471265, at \*11 (S.D.N.Y. Sept. 28, 2012) (argument not addressed in opposition brief waived), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014).[4] At the very least then, all of these claims should be dismissed with prejudice. *See Allen v. N.Y.C. Hous. Auth.*, 2012 WL 4794590, at \*4 (S.D.N.Y. Sept. 11, 2012) (dismissing abandoned claims).

**B.      Plaintiffs' "Organic Customer Location" Theory Should be Rejected**

In place of the claims they jettisoned, Plaintiffs present a new theory that Lightspeed fraudulently concealed that "customer location adds" were actually being driven by acquisitions rather than "organically." (Opp. 6; *id.* at 5-7, 18.) This claim cannot be pursued because, quite simply, it was not pled in the CAC. Plaintiffs act as if they did allege this theory—even accusing Defendants of "waiver" by failing to "proffer a single argument addressing [it]." (Opp. 18.) But this is refuted by the CAC itself: its 118 paragraphs contain just one reference to "organic customer location adds," and even that is buried, without analysis, within a block quote that spans half a page. (CAC ¶ 70.)[5] That is why Plaintiffs are forced to develop this argument by drawing from— and seeking judicial notice of—documents mentioned nowhere in the CAC. (Opp. 5 (citing Exs. P-C, P-D); *id.* at 7 (citing Ex. P-F).) The Court can and should reject Plaintiffs' claim on this basis alone. *Budhani*, 2021 WL 5761902, at \*3 (emphasizing that a complaint "'cannot be amended by the briefs in opposition to a motion to dismiss'").

---

[4] The same is true regarding Plaintiffs' "customer locations" allegations (CAC ¶¶ 48-49), which Defendants refuted (MTD 16) and which Plaintiffs have declined to defend in the Opposition.

[5] As discussed above, the CAC's allegations regarding customer count and location (CAC ¶¶ 29-30, 48-49) have been abandoned. While Plaintiffs suggest that their allegations regarding Lightspeed's figures being "smoke and mirrors" referred to "customer location count" (Opp. 8 (citing CAC ¶ 24)), a review of the CAC reveals that this statement was not made with any express connection to customer locations (CAC ¶¶ 23-25, 85).

4

Even if the Court considers Plaintiffs' new theory, dismissal is warranted. While Plaintiffs claim that Defendants "mask[ed]" their "struggles to grow organically" through customer location adds (Opp. 1, 19), a securities fraud complaint cannot just declare a statement false—it must "demonstrate with specificity why and how that is so." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004). Here, Plaintiffs do not contest the accuracy of a single figure that Lightspeed reported with respect to its customer locations. There is no claim, for instance, that Lightspeed did ***not*** record "another strong quarter of organic customer location adds" for the period ending December 31, 2021, as reported (Opp. 6), or that Lightspeed's "new customer location additions" for Q1 FY22 were ***not*** "60% higher than a year ago organically," as reported (*id.* at 7). "[A] violation of federal securities laws cannot be premised upon a company's disclosure of accurate historical data." *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 404 (S.D.N.Y. 2016).

Moreover, while Plaintiffs assert that Lightspeed "touted" its customer location growth while concealing the role that acquisitions played, or were expected to play, in the rise (Opp. 5-9), this is belied by the Company's disclosures. Lightspeed readily described how much each acquired company would contribute to customer location growth. (Defs. Reply Ex. A at 4 (reporting that ShopKeep serves "more than 20,000 customer locations" and that "[c]ombining with Upserve will grow Lightspeed's position in the U.S. hospitality market by an additional 7,000 customer locations"); Defs. Ex. L at 5 (Vend acquisition "grows customer base by more than 20,000 customer locations").)[6] Lightspeed then repeated these figures in its financial reports. (Defs. Ex. Q at 11; Defs. Ex. D at 2 (disclosing *pro forma* increase due to Vend); Defs. Reply Ex. B at S-10.)

---

[6] Reply exhibits addressing Plaintiffs' new theory have been appended to the Supplemental Declaration of Alexander C. Drylewski, dated September 12, 2022, and are referred to as "Defs. Reply Ex. __." The Court can take judicial notice that the statements referenced in these exhibits were made. *See Lewis v. M&T Bank*, 2022 WL 775758, at *1 (2d Cir. Mar. 15, 2022).

This data, when viewed together with Lightspeed's customer location figures from prior periods (*i.e.*, before the acquisitions), enabled investors to understand how all three companies contributed to customer location growth—the precise information supposedly concealed. (Defs. Ex. R at 10-11.) Plaintiffs cannot "premise[] [claims] on the nondisclosure of information that was actually disclosed." *In re Curaleaf Holdings, Inc. Sec. Litig.*, 519 F. Supp. 3d 99, 101 (E.D.N.Y. 2021) (Cogan, J.); *In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 397 (S.D.N.Y. 2006) ("[D]isclosure requirements are not intended to attribute to investors a child-like simplicity. Rather, investors are presumed to have the ability to be able to digest varying reports and data.").

Finally, while Plaintiffs assert that organic customer location growth had become "paltry" (Opp. 13, 18), the CAC does not offer a single particularized fact that such a trend had emerged—or ever existed—before Defendants made their challenged statements. At most, Plaintiffs point to Lightspeed's disclosure, made more than one month *after* the Class Period (and two months *after* the last challenged statement (CAC ¶ 82)), that the Company had experienced organic customer location *growth*—not a decline—of 2% for the period ending September 30, 2021, as compared to the prior quarter.[7] This post-Class Period figure does not support Plaintiffs' theory of fraud, which amounts to mere hindsight pleading that cannot demonstrate "contemporaneous[] fals[ity]." *In re Diebold Nixdorf, Inc. Sec. Litig.*, 2021 WL 1226627, at *7 (S.D.N.Y. Mar. 30, 2021).[8]

---

[7] Plaintiffs also ignore that on a year-over-year basis, organic customer location additions increased 19%. (Defs. Reply Ex. C at 2.)

[8] Also, Lightspeed never promised that its growth would continue *ad infinitum*, and in fact disclosed the opposite: "*[W]e anticipate that our growth rate will decline over time* to the extent that the number of customers using our platform increases and we achieve higher market penetration rates." (Defs. Ex. Q at 28.) This undercuts any notion that investors were misled.

### C.      Plaintiffs' "Organic Revenue Growth" Theory Fails

#### 1.      Allegations Concerning Third Quarter FY 2021 Are Flawed

Plaintiffs' allegation that Defendants misrepresented the Company's "organic revenue growth" relies on Spruce Point's flawed "balance sheet allocation analysis." (MTD 20-22.) While Plaintiffs allege that Spruce Point's analysis "directly contradict[ed]" Lightspeed's disclosure of 47% organic Software and Payments revenue growth (CAC ¶ 36), they do not dispute the accuracy of this 47% number or Defendants' explanation that: (1) the Company's transaction-based revenue rose precipitously during the Class Period, both overall and in percentage terms, (2) transaction-based revenue does not generate deferred revenue or trade receivables, the two metrics isolated by the Spruce Point "balance sheet allocation analysis"; (3) as a result, Lightspeed could report an increase in organic Software and Payments revenue despite experiencing a decline in deferred revenue and trade receivables; and (4) the Company disclosed that its revenue mix had shifted, with a greater proportion derived from transaction-based revenue and by becoming more accommodating of monthly subscription plans (which resulted in less deferred revenue compared to the same customer on an annual subscription plan). (MTD 20-22 & n.13.) Plaintiffs' silence on these points is dispositive, and highlights their failure to critically examine the Short Report.

Unable to attack Lightspeed's reported numbers, Plaintiffs shift to another previously unasserted theory—that by accurately reporting the 47% revenue growth,[9] the Company acquired a "duty to disclose that . . . . organic *subscription* growth" had supposedly declined. (Opp. 16.)[10]

---

[9] Lightspeed reported that "organic subscription and transaction-based revenue growth for the three and six months ended September 30, 2021[,] compared to the three and six months ended September 30, 2020[,] was *58% and 67%*, respectively" (Defs. Ex. C at 4)—*i.e.*, at growth rates *even higher* than what was reported in Q3 FY21. Plaintiffs do not dispute these figures either.

[10] Plaintiffs claim this duty arose because "'[t]he Company's main sources of revenue are subscriptions for its platforms.'" (Opp. 15.) But while this was correct for Q3 FY21, it was *not*

But Plaintiffs incorrectly suggest that deferred revenue—the metric on which the Short Report focused—is a part of the Company's subscription revenue. To the contrary, while deferred revenue may be *generated* by subscriptions, Lightspeed reported it as a *liability* because it reflects either payment or an unconditional right to an amount of consideration (*i.e.*, a receivable) for *services that have not yet been rendered* (as opposed to revenue, which is a line item on the Company's income statement). (MTD 7-8; Defs. Ex. E at 10).[11] Moreover, Plaintiffs continue to ignore Lightspeed's repeated disclosures that deferred revenue had decreased. (MTD n.13; Defs. Ex. F at 23 (noting "a decrease of $1.4 million in deferred revenue due to shorter contract duration"); Defs. Ex. E at 19 (decrease of $1.8 million); Defs. Ex. B at 22 (decrease of $2.7 million).)

All that aside, Plaintiffs fail to cite any authority that Lightspeed had to parse its revenue results and deliver the granular reporting (and negative spin) that Plaintiffs now desire.[12] So long as a company's "public statements are consistent with reasonably available data, corporate officials need not present an overly gloomy or cautious picture of current performance and future prospects," *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000), or "adopt plaintiffs' preferred description" of financial results, *In re XP Inc. Sec. Litig.*, 524 F. Supp. 3d 23, 31-32 (E.D.N.Y. 2021) (Cogan, J.) (no duty to describe costs as due to "'systems failures and order execution errors'" where there was no allegation that costs were omitted).[13]

---

true by the end of the Class Period. (Defs. Ex. C at 4 (transactions (49%) overtook subscriptions (44%) as a percentage of total revenue for six-month period ending September 30, 2021).)

[11] According to Plaintiffs, "Defendants concede" that "'subscription revenue' includes deferred revenue." (Opp. 15 (citing MTD 21).) A review of their citation reveals this simply is not true.

[12] Lightspeed also was under no duty to "delineat[e]" the precise role that transaction-based revenue had played in organic revenue growth (Opp. 16)—but in any event, the Company did disclose the increasing role that transactions were contributing to overall revenue, both in absolute and percentage terms. (Defs. Ex. C at 4.)

[13] The allegations in Plaintiffs' cited cases (Opp. 14-15) were concrete, historical, and verifiably false—a far cry from what is pled here.

**2.    Allegations Concerning First Quarter FY 2022 Are Flawed**

Similarly, Plaintiffs do not (1) dispute that Lightspeed accurately reported its "organic [Software and Payments revenue] growth" as 78% for the period ending June 30, 2021 (Opp. 7-8, 13-14); or (2) directly respond to the argument that their "trade receivables analysis" relies on flawed assumptions (MTD 22-23). Instead, Plaintiffs accuse Defendants of making a "factual argument that is inappropriate for consideration at the pleading stage." (Opp. 17.) But a court "need not accept as true an allegation that is contradicted by documents on which the complaint relies." *Emps. Ret. Sys. of Gov't of V.I. v. Morgan Stanley & Co. Inc.*, 814 F. Supp. 2d 344, 353 (S.D.N.Y. 2011). Here, Plaintiffs rely on Spruce Point's assumption that Vend possessed $3.9 million in "trade receivables," rather than $3.9 million in "trade receivables *and other assets*," as Lightspeed's disclosures actually state. (MTD 23.) Plaintiffs' "analysis" is thus incapable of demonstrating falsity under the PSLRA. And again, even assuming *arguendo* that Plaintiffs adequately pled a decline in organic trade receivables, this still would not demonstrate that any of Lightspeed's statements about overall organic revenue were false. (MTD 20-23.)

**D.    Plaintiffs' Acquisition-Related Claims Fail**

Plaintiffs argue that the Company failed to disclose that it pursued acquisitions to "mask[] Lightspeed's struggles with organic growth by inflating revenue numbers and customer count." (Opp. 19.) The cornerstone of this allegation—that Lightspeed was concealing "struggles with organic growth"—should be rejected for the reasons discussed. (MTD 23-28, Point I(C), *supra*). And the second piece—that Lightspeed pursued these acquisitions to "inflat[e] revenue numbers and customer count"—is equally flawed. Lightspeed repeatedly told investors that one pillar of its strategy was to grow customer locations, at least in part, through acquisitions. Lightspeed cited the acquisition of its target's customer base as one benefit in pursuing the transaction. (*See, e.g.*, CAC ¶ 58 ("Following the closing of the [ShopKeep] acquisition, Lightspeed will serve over 100,000

9

customer locations worldwide . . . ."); Defs. Ex. I at 7 ("We complement our organic growth strategies by taking a targeted and opportunistic approach to acquisitions."); Defs. Reply Ex. A at 4 ("Combining with Upserve will grow Lightspeed's position in the U.S. hospitality market by an additional 7,000 customer locations . . . ."); Defs. Ex. L at 5 (upon acquiring Vend, "Lightspeed will serve . . . over 135,000 customer locations worldwide" and "will approximately doubl[e] [its] customer base" in the Asia-Pacific region).) The Opposition ignores these disclosures.

Plaintiffs' next bit of conjecture—that Defendants engaged in "no active integration efforts" because they never intended to integrate these companies (Opp. 21) —is unsupported and illogical. (MTD 25-26.) Their sole support is a grab-bag of vague opinions from anonymous CWs—low-level former employees (many of whom worked at the companies acquired) with no alleged role in, or insight into, Lightspeed's integration plans. (CAC ¶¶ 38-43.) At most, these allegations amount to hindsight-based operational criticisms of Lightspeed's ability to integrate these companies—not fact-based support for the proposition that Defendants never intended to try. (*See, e.g.*, CAC ¶ 38 (alleging only that "company did not in fact build [the] . . . advantages" of ShopKeep "into Lightspeed"); *id.* ¶ 39 (claiming only that Company "fail[ed] to integrate its acquisitions despite lofty promises to do so"); *id.* ¶ 41 (CW4 claiming only that Company "never integrated" ShopKeep).) In fact, many of Plaintiffs' allegations **refute** their theory that Defendants never planned to integrate. (*See, e.g.*, *id.* ¶ 39 (CW6 alleging that "Dasilva spoke about creating a 'unified product' incorporating ShopKeep"); *id.* ¶ 43 (alleging Dasilva's communicated intentions to "combine all the software from its acquisitions into a unified experience called 'Omni'").) Courts routinely reject such thin and contradictory allegations. *See, e.g.*, *Ford v. Voxx Int'l Corp.,*

10

2016 WL 3982466, at *6 (E.D.N.Y. July 22, 2016).[14] This Court should do the same.

### E.  Plaintiffs Cannot Evade *Omnicare*

Plaintiffs also cannot evade the stringent pleading requirements of *Omnicare*. (MTD 29-30.) While they argue that Defendants could not have "reasonably believed . . . integration efforts were well underway" because "there were no active integration efforts" (Opp. 21), they offer only the conclusory and conflicting CW allegations discussed above. Plaintiffs also fail to plead with specificity that Defendants omitted any facts that contradicted their subjective beliefs about the Company's acquisitions. And even if Plaintiffs had pled such detail, opinions "[are] not necessarily misleading when [a speaker] knows, but fails to disclose, some fact cutting the other way." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 189-90 (2015). Indeed, *Omnicare* "cautioned against an overly expansive reading" of its omissions prong and emphasized that meeting it would be "no small task for an investor." *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016)). Plaintiffs fail to meet this burden. (MTD 29-30.)[15]

### F.  Plaintiffs Cannot Avoid the Safe Harbor or Bespeaks Caution Doctrine

The Opposition is no more successful at avoiding the PSLRA's safe harbor. (MTD 29.) Plaintiffs are wrong that none of the Acquisition Statements were forward-looking. (Opp. 20-21.) Many of them were made in merger press releases or analyst calls before or on the same day the

---

[14] In *City of Omaha Police & Fire Retirement System v. Evoqua Water Technologies Corp.*, 450 F. Supp. 3d 379 (S.D.N.Y. 2020) and *Abramson v. NewLink Genetics Corp.*, 965 F.3d 165 (2d Cir. 2020), the plaintiffs alleged a stark disconnect between what the defendants were telling investors and what had already occurred behind the scenes. These cases are miles apart from the vague, opinion-based, and after-the-fact critiques offered here.

[15] Other than reciting the same legally infirm theories discussed above, Plaintiffs do not even address the examples of puffery identified by Defendants. (MTD 24 & n.16.)

11

acquisitions closed, making them prospective in character. (CAC ¶¶ 58, 60, 65, 72.)[16] Plaintiffs posit that Defendants' stated plans and expectations did not represent their "true" objectives (Opp. 21), but again, there is no support for this theory. Nor can Plaintiffs dispute that Lightspeed provided detailed warnings about the risks that it might not successfully integrate the acquisitions. (MTD 27-28.) Plaintiffs barely mention these extensive warnings at all, which controvert their theory of fraud.

## II.  PLAINTIFFS FAIL TO PLEAD SCIENTER

### A.  Plaintiffs Fail to Plead Motive or Opportunity

Plaintiffs do not dispute that Dasilva's alleged stock sales involved only a small fraction of his overall holdings (5.1%), or that he continued to hold significant amounts of stock throughout the Class Period. (MTD 31 & n.23.) This is antithetical to a cogent inference of fraud. *See In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 270 (S.D.N.Y. 2009) (stock sales of 4.9% and 22.5% not suspicious); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 593 (S.D.N.Y. 2011) ("It defies reason that an entity looking to profit on a fraudulently inflated stock price would hold close to ninety percent of its shares as share prices fell, while knowing that the information illuminating the fraud was seeping into the market."). Plaintiffs also do not allege sales by any other Lightspeed executive during the Class Period, further undermining any inference of fraud. (MTD 32.)[17]

---

[16] Dasilva's statement that integration was "well under way, with operations expected to be fully integrated by April and product by end of summer" (CAC ¶ 69)—was also forward-looking. *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *19 (S.D.N.Y. Apr. 2, 2020) (statements about "being 'on track' with respect to [] projected margin expansion" were forward-looking), *aff'd sub nom. Bristol Cnty. Ret. Sys. v. Adient PLC*, 2022 WL 2824260 (2d Cir. July 20, 2022).

[17] Plaintiffs try to blunt this shortfall by claiming that "insiders" own less Company stock now than at the IPO. (Opp. 28.) They do not specify who any of these "insiders" are; identify when or why they sold; or offer any other details. This is far from sufficient. *Gildan Activewear,* 636 F. Supp. 2d at 270 ("[T]he mere fact that insider stock sales occurred does not suffice to establish scienter.").

Plaintiffs' argument that Dasilva traded "eight days after issuing the February 4, 2021 misstatements" (Opp. 28) is also unavailing—sales by company officials following the reporting of financial results (*i.e.*, after the information has become public) are commonplace, not suspicious. *See In re Avon Prods., Inc. Sec. Litig.*, 2009 WL 848017, at *22 (S.D.N.Y. Feb. 23, 2009) ("[A]ll of the sales occurred shortly after announcements of quarterly results, . . . a pattern that appears benign on its face, and the opposite of an indication of fraud."); *City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 475 (S.D.N.Y. 2008).

Finally, Plaintiffs fail to meaningfully address that Dasilva sold more shares ***before*** the Class Period (and thus before any supposed fraud). (MTD 31.) Although Plaintiffs dismiss this as a "fact-based argument" (Opp. 28), they cannot contest its accuracy or its legal import on this motion, as explained by the Second Circuit. *See Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022). And while Plaintiffs complain that Defendants do not specify the proceeds yielded from those pre-Class Period sales, the burden is on ***Plaintiffs*** to plead a concrete motive and opportunity under the PSLRA. On that score, Plaintiffs do not dispute that they fail to plead Dasilva's net profits from his Class Period sales—another fatal gap. (MTD n.24.)

### B.      Plaintiffs Fail to Plead Conscious Misbehavior or Recklessness

Plaintiffs also do not plead conscious misbehavior or recklessness—allegations that must be "correspondingly greater" due to the lack of alleged motive. *Ark. Pub. Emps. Ret. Sys.*, 28 F.4th at 355. For instance, they fail to plead that Defendants had access to any specific information that contradicted Lightspeed's Class Period statements when made. (MTD 33.) Plaintiffs assert that Defendants admitted to "monitor[ing]" KPIs (Opp. 23), but this bare allegation says nothing about ***how*** that information contradicted any particular challenged statement, ***which*** Individual Defendant(s) received that information, and ***when*** the Individual Defendant(s) received it. The PSLRA demands more. *See Canez v. Intelligent Sys. Corp.*, 2021 WL 3667012, at *10 (E.D.N.Y.

13

Aug. 18, 2021) ("[W]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information.").[18]

Plaintiffs' related argument, based on CW allegations, that the Individual Defendants had "access to Salesforce and Looker" and were "always pulling reports" (Opp. 25) fares no better. Plaintiffs do not allege that these CWs had any first-hand knowledge of what the Individual Defendants viewed and when.[19] And again, Plaintiffs fail to specify what any of these reports reflected. *See Woolgar v. Kingstone Cos., Inc.*, 477 F. Supp. 3d 193, 220 (S.D.N.Y. 2020) (vague allegations that CW submitted "monthly reports" were insufficient); *Frankfurt-Tr. Inv. Lux. AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 221-22 (S.D.N.Y. 2018) (rejecting "generic [CW] statements" with no description of "when these reports would have been provided to the Executive Defendants" or "what they contained"), *aff'd sub nom. Kapitalforeningen Lægernes Invest v. United Techs. Corp.*, 779 F. App'x 69 (2d Cir. 2019). Nor can Plaintiffs argue a strong inference of scienter based on alleged discussions regarding the acquisitions at internal meetings. (Opp. 27.) As discussed above, these allegations (CAC ¶¶ 39-43) do not support, and in some instances refute, Plaintiffs' illogical theory that Lightspeed never intended to integrate the acquisitions. *See In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 446 n.83 (S.D.N.Y. 2006) ("Courts often refuse

---

[18] Unlike here, the plaintiffs in *In re Salix Pharmaceuticals, Ltd.*, 2016 U.S. Dist. LEXIS 54202, at *46 (S.D.N.Y. Apr. 22, 2016), identified specific internal reports that directly contradicted publicly reported inventory levels, along with public statements by the CFO that the internal reports were "consistent" with public reports. The defendants in *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 270 (3d Cir. 2009), answered repeated, specific public inquiries from investors and analysts regarding the metric at issue, which was a central focus of contrary reports.

[19] In contrast to this case, in *Cornwell v. Credit Suisse Group*, 689 F. Supp. 2d 629, 637 (S.D.N.Y. 2010), at least one CW sent the identified reports directly by email to individual defendants, and in *Speakes v. Taro Pharmaceutical Industries, Ltd.*, 2018 WL 4572987, at *8 (S.D.N.Y. Sept. 24, 2018), CWs alleged that they "worked directly with an individual Defendant . . . ."

to infer scienter, even on a recklessness theory, when confronted with illogical allegations.").[20]

Finally, Plaintiffs argue that scienter can be inferred from the Individual Defendants' "signed Forms 52-109F2 with the SEC certifying that they each reviewed the quarterly Class Period financial reports and MD&As" and their "Sarbanes-Oxley certifications." (Opp. 24, n.23.) Courts routinely reject similar theories as insufficient. *See, e.g.*, *In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 590 (S.D.N.Y. 2010); *City of Brockton Ret. Sys.*, 540 F. Supp. 2d at 474.[21]

Stripped to its essence, Plaintiffs' theory is that Defendants ***must have known*** of the alleged fraud based solely on their positions. Courts reject this pleading tactic time and again. *See, e.g.*, *Venkataraman v. Kandi Techs. Grp., Inc.*, 2021 WL 4952260, at *4 (S.D.N.Y. Oct. 25, 2021); *Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 401 (S.D.N.Y. 2020).[22] On the other hand, Plaintiffs' insufficient allegations are more than overtaken by the compelling inference of ***non***-fraud. (MTD 34 & n.26.) Lightspeed's disclosures provided extensive information regarding its KPIs and acquisitions while repeatedly warning of the risks entailed. This paints the picture of a company and management team that acted responsibly, not with fraudulent intent.[23]

## CONCLUSION

By abandoning the core of their claims, Plaintiffs' Opposition confirms that the CAC merely parroted the untenable accusations of the Short Report. The PSLRA was enacted to prevent just this sort of conduct, and the CAC should be dismissed in its entirety with prejudice.

---

[20] Plaintiffs' argument that scienter is supported by "the fact that the founders of all three [acquired] companies left around the time of each acquisition" (Opp. 27) is rank speculation and also unpled.

[21] Plaintiffs' assertion that scienter can be inferred from the Individual Defendants' "exceedingly positive statements" during earnings calls (Opp. 24) is circular. None of these statements is actionable, and even if they were, Plaintiffs have not pled they were made with fraudulent intent.

[22] Plaintiffs claim that Defendants somehow have failed to contest their allegations of scienter and thus "concede" them. (Opp. 25.) This is not true. (*See* MTD 32-33.)

[23] Because Plaintiffs fail to plead a primary violation by Lightspeed or culpable participation by the Individual Defendants, their Section 20(a) claim fails. (MTD 34.)

Dated: New York, New York
      September 12, 2022

/s/ Alexander C. Drylewski
Alexander C. Drylewski
William J. O'Brien
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000
Fax: (212) 735-2000
alexander.drylewski@skadden.com
william.obrien@skadden.com

*Counsel for Defendants*